UNITED STATES of America, Plaintiff–Appellee,

v.

Wesley Allen DORROUGH, Defendant–Appellant.

No. 89–7086.

United States Court of Appeals, Tenth Circuit.

Feb. 28, 1991.

Larry Finstrom, Dallas, Tex., for defendant-appellant.

Sheldon J. Sperling, Asst. U.S. Atty. (John Raley, U.S. Atty., with him on the brief), E.D. Okl., Muskogee, Okl., for plaintiff-appellee.

Before McKAY, SETH, and BRORBY, Circuit Judges.

McKAY, Circuit Judge.

Defendant Wesley Allen Dorrough appeals his convictions under 18 U.S.C. § 2 (1988) and 21 U.S.C. §§ 841, 846 (1988) for attempting to manufacture phenyl–2–propanone and amphetamine and for possession of phenyl–2–propanone with intent to manufacture amphetamine. The defendant also appeals his convictions under 21 U.S.C. § 846 for conspiring to manufacture, possess, and distribute amphetamine, and under 18 U.S.C. §§ 2, 1952 (1988) for traveling in interstate commerce in the aid and promotion of drug offenses. Finally, Mr. Dorrough appeals his sentence under the Federal Sentencing Guidelines.

## I.

The defendant was charged along with Larry Callihan, Darrel Russell, and Dennis Moore in an eight-count indictment relating to the manufacture of phenyl–2–propanone ("P–2–P")[1] and amphetamine. The police observed these individuals purchase chemicals in Texas and transport the chemicals,

---

1. Phenyl–2–propanone is a controlled substance produced by heating chemicals under the proper conditions. It is then heated in combination with other chemicals to produce amphetamine.

glassware, and other laboratory equipment for manufacturing P–2–P and amphetamine to a drug laboratory in Oklahoma.

On February 22, 1989, the defendant's brother and mother, purchased ether [2] from a chemical supply house in Dallas, Texas. They delivered the ether to the residence of co-defendant Robert Moore in Dallas. Mr. Moore and a companion took a barrel apparently containing phenylacetic acid, a building block for the manufacture of amphetamine, from Dallas to Navarro County and returned to Dallas the next day. On the morning of February 23, 1989, co-defendants Callihan and Russell arrived at Mr. Moore's residence with their pickup trucks. The chemicals were loaded into Mr. Russell's truck and Messrs. Callihan and Russell drove their trucks to Hugo, Oklahoma.

In Hugo, Messrs. Callihan and Russell met the defendant. They followed him to a site where they left the truck loaded with chemicals and traveled to his home in a secluded rural area outside of town. The three co-defendants returned to retrieve the truck and drive it to the house. That afternoon the defendant made several trips from his house to a mini-storage unit in Hugo to pick up laboratory glassware and more chemicals. He brought these items back to his house.

The police subsequently executed a search warrant on the defendant's house and arrested the defendant, Mr. Russell, and Mr. Callihan. Investigating agents discovered a large drug laboratory and seized a variety of chemicals, glass flasks, tubes, pumps, and other lab equipment. A government chemist analyzed the chemicals seized and found that P–2–P had been manufactured and that the other necessary chemicals to produce amphetamine were present.

## II.

The defendant's first contention on appeal is that evidence was erroneously introduced because it was seized as a result of a search warrant that did not sufficiently describe the place to be searched.

 The fourth amendment states that search warrants may be issued only on probable cause "particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. The warrant must describe the place to be searched with sufficient particularity so that the executing officer can locate and identify it with reasonable effort. *United States v. Mabry*, 809 F.2d 671, 681 (10th Cir.), *cert. denied*, 484 U.S. 874, 108 S.Ct. 33, 98 L.Ed.2d 164 (1987). The requisite specificity of the description differs for rural and urban areas and depends heavily on the facts of each case. *United States v. Williams*, 687 F.2d 290, 293 (9th Cir.1982).

 The defendant highlights several aspects of the warrant that differ from the actual description of the home. The warrant described the defendant's residence as a single-story wood frame dwelling. In fact, the home was only partially wood framed. The warrant also described the residence as having two wood frame single-story storage buildings within its curtilage, but there was actually only one outbuilding. Finally, the warrant described the turnoff to the defendant's residence as being located one-half mile from an intersection. The defendant testified that the turnoff was three-tenths to four-tenths mile from the intersection.

Although the actual physical characteristics of the defendant's residence may have varied to some degree from the description contained in the warrant, we conclude that the warrant sufficiently described the area to be searched. The Supreme Court has stated that practical accuracy rather than technical precision controls the determination of whether a search warrant adequately describes the premises to be searched. *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965). In this case, the warrant stated that the turnoff to the defendant's home was marked by a red, white, and black mailbox in the shape of a house. This

2. Ether is used to powder, or dry, the chemical produced from the cooking process.

unique landmark enabled the officers to locate the residence with reasonable effort. *See United States v. Mabry,* 809 F.2d at 681. In addition, the warrant described the home's location as one-quarter mile up the side of a mountain. At the sentencing hearing, the defendant admitted that his house was the only one in that area on a hill. Based on the evidence presented, we conclude that the trial court did not err when it denied the defendant's motion to suppress.

### III.

■ The defendant's second argument is that the evidence is insufficient to support the conviction for conspiracy to manufacture, possess, and distribute amphetamine. He also contends that there was insufficient evidence to support his conviction for traveling in interstate commerce to manufacture, possess with intent to distribute, and/or distribute amphetamine. The test for reviewing the sufficiency of the evidence in criminal cases is that the evidence, both direct and circumstantial and the reasonable inferences to be drawn therefrom, is sufficient if, when viewed in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt. *United States v. Hooks,* 780 F.2d 1526, 1531 (10th Cir.), *cert. denied,* 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986).

The defendant argues that the government failed to present evidence regarding what would be done with the P–2–P in order to manufacture amphetamine. He urges us to conclude that a reasonable jury could not find him guilty of the conspiracy and interstate travel counts without evidence describing the recipe and procedure for manufacturing amphetamine.

■ Several government witnesses and co-defendant Larry Lee Callihan testified about the operations of the drug laboratory which would have allowed a jury to conclude that the defendant conspired to manufacture, possess, and distribute amphetamine. Government chemist Steven Brookman testified that he discovered six flasks at the laboratory and found substances used to make P–2–P. He further testified that the chemicals for manufacturing amphetamine were present at the lab. Mr. Brookman stated that chemicals were being cooked which would have produced about 100 pounds of amphetamine. Record, vol. 7, at 671–74.

The police recovered hydrogen chloride gas and ether at the laboratory. Detective Shaw of the Dallas Police Department testified that these chemicals were used to dry the amphetamine produced from the cooking process. He also described the lab as a "working methamphetamine lab or amphetamine lab." Record, vol. 4, at 124–29. Similarly, Detective Bjurstrom described the lab as "a very large amphetamine lab." Record, vol. 5, at 249.

Co-defendant Larry Lee Callihan testified that the defendant told him what to do in order to set up a drug laboratory. Record, vol. 6, at 520. The defendant gave Mr. Callihan money to purchase materials for the lab. *Id.* at 529. At the defendant's direction, Mr. Callihan and Darrel Russell took chemicals for the drug laboratory to Hugo, Oklahoma. In Hugo, they met the defendant and took the supplies to the clandestine lab site.

We conclude that the evidence is sufficient to support the defendant's conviction for conspiracy. Direct evidence that the defendant and his co-defendants used the P–2–P to manufacture amphetamine is not required. Criminal convictions may be sustained on circumstantial evidence. *See United States v. Cook,* 793 F.2d 734 (5th Cir.1986); *United States v. Downen,* 496 F.2d 314, 318 (10th Cir.), *cert. denied,* 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 142 (1974). The reasonable inferences to be drawn from the testimony of Mr. Callihan, Mr. Brookman, and Detectives Shaw and Bjurstrom would allow a reasonable jury to conclude that the defendant directed his co-defendants to bring chemicals and supplies to Hugo and that they agreed to use these materials to manufacture amphetamine. Accordingly, the defendant's conspiracy conviction is affirmed.

We also believe that the evidence is sufficient to support the defendant's conviction for traveling in interstate commerce in the aid and promotion of drug offenses in violation of the Travel Act, 18 U.S.C. § 1952, and in violation of 18 U.S.C. § 2. A Travel Act violation must be supported by proof that a defendant: (1) traveled or used facilities in interstate commerce; (2) with the intent to promote, manage, establish, carry on or facilitate the promotion, management, establishment, or carrying on of a prohibited activity; and (3) thereafter attempted to or did in fact engage in one of the proscribed activities. *United States v. Peveto*, 881 F.2d 844, 860 (10th Cir.), *cert. denied, Hines v. United States*, — U.S. ——, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989).

The testimony presented at trial demonstrated that the defendant arranged for the interstate transportation from Texas to Oklahoma of chemicals and laboratory supplies to be used in the manufacture of amphetamine. The defendant met Messrs. Callihan and Russell when they arrived in Hugo, Oklahoma, and went with them to the secluded lab site. Viewing the evidence in the light most favorable to the government, we conclude that there is sufficient evidence from which a jury could find the defendant guilty beyond a reasonable doubt of violating the Travel Act.

### IV.

The defendant also argues that the district court applied the incorrect base offense under the Federal Sentencing Guidelines. The court arrived at a base offense level of 34 by multiplying the 94 liters of liquid containing P–2–P that was found at the laboratory by the .375 cocaine equivalency formula contained in the Guidelines' drug equivalency table and arriving at a cocaine equivalency of 35.25 kilograms.

The defendant contends that the correct base offense level should be 28. This calculation is based on the testimony of Mr. Castle, a chemist for the defense, who stated that the most P–2–P that could have been produced from the laboratory was 8.85 kilograms. The defendant argues that the correct weight for calculating the base offense level in a manufacturing case should be the maximum amount of drugs that could be produced from the manufacturing process. The waste products of the process, according to the defendant, should not be included.

The base offense level for drug offenses is calculated from the drug quantity table found in section 2D1.1(c) of the Sentencing Guidelines. The footnote accompanying the table states that "the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(c) note * (Nov. 1990). Indeed, this court has held that for purposes of the drug quantity table, the weight of a mixture containing a controlled substance is the entire amount of the mixture. *United States v. Callihan*, 915 F.2d 1462 (10th Cir.1990). Other courts have reached the same conclusion. *See United States v. Mueller*, 902 F.2d 336, 345 (5th Cir.1990); *United States v. Daly*, 883 F.2d 313, 318 (4th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 2622, 110 L.Ed.2d 643 (1990).

In this case, agents found 94 liters containing a controlled substance, phenyl–2–propanone, at the drug laboratory outside Hugo, Oklahoma. The trial court converted this quantity to 35.25 kilograms of cocaine using the drug equivalency table in the Guidelines and arrived at the correct base offense level of 34. We affirm the trial court's calculations under the Sentencing Guidelines.

The order of the district court is AFFIRMED.