**UNITED STATES of America, Plaintiff,**

**v.**

**William D. KILLION, Defendant.**

**Cr. A. No. 90–10004–01.**

United States District Court,
D. Kansas.

March 26, 1992.

Kim Fowler, Asst. U.S. Atty., Wichita, Kan., for plaintiff.

William D. Killion, Jr., Fort Worth, Tex., pro se.

## OPINION AND ORDER

THEIS, District Judge.

Defendant William D. Killion pled guilty to one count of manufacturing 83.8 grams of Phenyl–2–Propanone (P–2–P) in violation of 21 U.S.C. § 841(a)(1). He was sentenced on April 5, 1991 to forty-six months imprisonment in accordance with the Sentencing Reform Act of 1984. Three months after sentencing, the defendant mailed a letter to the court, claiming that the court erred in calculating his sentence and that he was wrongfully denied federal jail credit for time spent in state custody under a federal detainer. (Doc. 97). Mindful that the defendant's letter was filed *pro se*, the court construed his letter as a motion for relief from an illegal sentence pursuant to 28 U.S.C. § 2255, which authorizes a prisoner in custody to move the sentencing court to vacate or correct the sentence that was allegedly "imposed in violation of the Constitution or laws of the United States, or ... in excess of the maximum authorized by law...." (Doc. 98).

## FACTUAL BACKGROUND

Defendant Killion was charged with knowingly and intentionally manufacturing 83.8 grams of P–2–P with the intent of manufacturing amphetamines, in violation of 21 U.S.C. § 841(a)(1). While searching the premises occupied by the defendant and his co-conspirators, the government found 66.3 grams of a yellow liquid and, in a separate container, 17.5 grams of a hardened dark brown substance. The DEA laboratory reports reveal that the 66.3 grams of yellow liquid contained 52.9 grams of P–2–P. In the 17.5 grams of dark brown substance, however, there was only an unquantifiable trace of P–2–P. (Govt.Exh. 13 & 14).

This court, in sentencing the defendant, used the entire weight of the brown substance and yellow liquid (83.8 grams) to calculate his base offense level. In accordance with the sentencing guidelines, the defendant was assigned a total offense level of 14, which carries an imprisonment range of 37 to 46 months. The defendant received a sentence of 46 months imprisonment.

The defendant now challenges the length of his sentence, contending that the court erroneously included the weight of unusable waste by-products in determining his base offense level. Specifically, the defendant argues that the yellow liquid and the hardened dark brown substance contained waste by-products of the P–2–P manufacturing process that should not have been included in the court's calculations. From the 83.8 grams of the total mixture, the defendant claims, only 52.928 to 53.0 grams constituted P–2–P. The defendant asserts that he should have been assigned a category 8 under the guidelines, based on 53.0 grams of P–2–P.

Apart from arguing that the court improperly included waste products in calculating the defendant's sentence, he also contends that the court wrongfully denied him credit for time spent in state confinement. The defendant seeks federal credit for the period between his arrest and his eventual return to state custody after federal prosecution.

## DISCUSSION

### 1. CALCULATION OF THE BASE OFFENSE LEVEL

██ Section 401 of the Comprehensive Drug Abuse Prevention and Control Act, under which the defendant was sentenced, imposes penalties based on the weight of the controlled substance, including "a mixture or substance containing a detectable amount" of the controlled substance. 21 U.S.C. § 841(b). Similarly, the Sentencing Guidelines state that "[t]he weight of a controlled substance ... refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1, n.* (1991). The plain language of the statute and guidelines, thus, requires that the total weight of any mixture containing a detectable amount of the controlled substance be used for sentencing. Although it is undisputed that the mixture (the yellow liquid and brown substance) belonging to Defendant Killion contained "a detectable

amount" of P-2-P, the defendant nevertheless argues that this court erred in using the entire weight of the mixture for sentencing. The defendant contends that, despite the literal statutory language, Congress did not intend for unusable waste products from the drug manufacturing process to be included in determining a defendant's sentence.

Two cases rendered by the Tenth Circuit have resolved this issue of whether the weight of unusable waste products containing a detectable amount of P-2-P should be included in determining a defendant's sentence. In *United States v. Dorrough,* 927 F.2d 498, 502 (10th Cir.1991), the Tenth Circuit adopted a literal interpretation of the statutory language, "mixture or substance containing a detectable amount of [the controlled substance]," and held that the entire weight of a mixture containing P-2-P should be used to arrive at the base offense level—even though the mixture mainly consisted of waste products. The court rejected the defendants' argument that, in a manufacturing case, only the "maximum amount of drugs that could be produced from the manufacturing process" should be considered. *Id.* As such, the court included the weight of waste products of the P-2-P manufacturing process in determining the defendant's base offense level. *Id.*

Similarly, in *United States v. Callihan,* 915 F.2d 1462, 1463 (10th Cir.1990), the Tenth Circuit included the weight of waste products from the P-2-P manufacturing process in determining the defendant's sentence even though the actual amount of P-2-P found called for a much lower sentence. The court declared that "the scale weight of a mixture or compound containing a controlled substance is the entire amount of the mixture or compound." *Id.*

Because the yellow liquid and brown substance belonging to the defendant and his co-conspirators contained a detectable amount of P-2-P, the entire amount of the mixture (83.8 grams) should be used for sentencing the defendant, in accordance with *Dorrough* and *Callihan.*[1] Defendant Killion's request for a reduced sentence based on a lesser amount of P-2-P is, therefore, denied.

### 2. CREDIT FOR STATE CUSTODY

■ Another issue raised by the defendant concerns federal jail credit for time spent in state custody under a federal detainer. Killion was arrested by the state authorities on March 31, 1989 for manufacturing P-2-P. While the defendant was incarcerated, the state of Kansas learned of his parole violation and ordered the defendant to be held without bond. The state Parole Board ordered the defendant confined until July 1990. On April 10, 1990, while the defendant was serving the term imposed for his parole violation, the federal authorities assumed custody of the defendant via writ of habeas corpus. According to the defendant, because he was under federal custody, he was effectively prevented from gaining reparole in July 1990. Defendant was returned to state custody on April 10, 1991, after he pled guilty to the federal charge and was sentenced by this court. Defendant seeks credit for time served between his arrest (March 31, 1989) and his return to state custody (April 10, 1991).

Under 18 U.S.C. § 3585, a defendant is entitled to credit toward the service of a term of imprisonment where, before the sentence commences, he has spent time in official detention (1) as a result of the offense for which the sentence was im-

---

1. The Eleventh Circuit has construed the Supreme Court's "market-oriented" rationale in *U.S. v. Chapman,* —— U.S. ——, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), to preclude the consideration of a commercially-unusable liquid carrier medium for determining a defendant's sentence. *U.S. v. Rolande-Gabriel,* 938 F.2d 1231 (11th Cir.1991). Reasoning that the drug, cocaine, was in an unusable form until the powder was extracted from the liquid, and thus was not usable, consumable or ready for retail or wholesale distribution, the Eleventh Circuit held that the weight of the "liquid waste" could not be included in calculating the base offense level. Although the reasoning in *Rolande-Gabriel* has some force, this court is unwilling to contradict the direct Tenth Circuit pronouncements, which hold definitively that the waste products of the P-2-P manufacturing process are includable in determining a defendant's sentence.

posed; or (2) as a result of any other charge for which the defendant was arrested *after* the commission of the offense for which the sentence was imposed—as long as that time has not been credited against another sentence.

Section 3585 superseded 18 U.S.C. § 3568, which required the Attorney General to give jail credit to any person entitled to receive such credit under the statute. The superseded statute required a prisoner to exhaust administrative remedies with the Bureau of Prisons before seeking judicial relief. *See, e.g., Ramsey v. Brennan,* 878 F.2d 995, 996 (7th Cir.1989). Although the new provision makes no reference to the Attorney General, several jurisdictions have nonetheless read the exhaustion requirement into the new statute. *See United States v. Brumbaugh,* 909 F.2d 289, 290 (7th Cir.1990) ("the change in language does not signal that Congress intended to relieve the Attorney General of the responsibility for making this calculation"); *United States v. Lucas,* 898 F.2d 1554, 1556 (11th Cir.1990). In *United States v. Woods,* 888 F.2d 653, 654 (10th Cir.1989), *cert. denied,* 494 U.S. 1006, 110 S.Ct. 1301, 108 L.Ed.2d 478 (1990), the Tenth Circuit similarly held that exhaustion of administrative remedies was required under § 3585, although the court did not discuss the changed statutory language.

 A prisoner must, therefore, exhaust his administrative remedies with the Attorney General before judicial review is permissible. *Id.* The exhaustion requirement, however, may be waived by the government. *Id. Contra Brumbaugh,* 909 F.2d at 290 n. 2 (exhaustion issue is jurisdictional, and cannot be waived). In the present case, although the defendant has sought judicial relief without first exhausting his administrative remedies, the government failed to raise an objection. Because the government has, in effect, waived the exhaustion requirement, the court may address the merits of the defendant's claim. *See Woods,* 888 F.2d at 654.

The defendant contends that he was wrongfully denied credit for serving time between March 31, 1989 to April 10, 1991 in official custody. According to the defendant, the state authorities discovered his parole violation solely because of his arrest for P–2–P manufacturing. Further, argues the defendant, the federal detainer effectively prevented him for gaining reparole in July 1990.

 The court notes initially that the defendant bears the burden of proving that the state confinement "was exclusively the product of such action by Federal law-enforcement officials [so] as to justify treating the State jail as the practical equivalent of a Federal one." *United States v. Harris,* 876 F.2d 1502, 1506 (11th Cir.) (quoting *Ballard v. Blackwell,* 449 F.2d 868, 869 (5th Cir.1971)), *cert. denied,* 493 U.S. 1005, 110 S.Ct. 569, 107 L.Ed.2d 563 (1989). The defendant, thus, must prove that, absent the federal detainer, he would have been released from state confinement.

In the instant case, however, assuming *arguendo* that defendant Killion has borne this burden, his claim for credit is nonetheless untenable because the state of Kansas has given him credit toward his state sentence for the time he served under the federal detainer. Section 3585 permits jail time credit only if the time served by the detainee "has not been credited against another sentence." 18 U.S.C. § 3585. The defendant argues that the state of Kansas did not give him credit simply "through an act of grace" but was "bound by law to give credit for all time spent in custody, regardless of whether or not the time is spent in the custody of the state of Kansas ... or in federal custody." Whether the defendant received credit out of the state's sheer benevolence or from the force of law, the fact remains that he had, indeed, received credit toward his state sentence for time served between his arrest and his ultimate return to state custody. As such, he is not entitled to benefit from § 3585. Defendant's request for custodial credit is, therefore, denied.

IT IS BY THIS COURT THEREFORE ORDERED that Defendant's Motion for Relief from an Illegal Sentence (Docs. 97, 102, 104, 105) is hereby denied. Defendant's Motion for Appointment of Counsel

(Doc. 101) has been rendered moot, and is therefore also denied.