**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 5/29/96**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA, )
)
      Plaintiff-Appellee, )
)
v. ) No. 95-7098
)
WESLEY ALLEN DORROUGH, )
)
      Defendant-Appellant. )

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. CR-89-21-1-S)

_____

Sheldon J. Sperling (John Raley, United States Attorney, with him on the brief), Assistant United States Attorney, Muskogee, Oklahoma, for Plaintiff-Appellee.

Stephen J. Greubel (Stephen J. Korr, Federal Public Defender, with him on the briefs), Assistant Federal Public Defender, Tulsa, Oklahoma, for Defendant-Appellant.

_____

Before **TACHA, BRORBY** and **EBEL**, Circuit Judges.

_____

**BRORBY**, Circuit Judge.

_____

      Defendant Wesley Allen Dorrough appeals his sentence under USSG §2D1.1, comment.

(n.1). We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and we affirm.[1]

_____

    [1] The panel commends attorneys Stephen J. Greubel, who appeared on behalf of the appellant, and Sheldon J. Sperling, who appeared on behalf of the appellee, for the quality of their oral arguments and their candor before the court.

A jury convicted Mr. Dorrough of attempting to manufacture phenyl-2-propanone ("P2P") and amphetamine, possession of P2P with intent to manufacture amphetamine, conspiring to manufacture, possess, and distribute amphetamine under 18 U.S.C. § 2 and 21 U.S.C. §§ 841 and 846 and traveling in interstate commerce in the aid and promotion of drug offenses. 18 U.S.C. §§ 2 & 1952. Under the version of the sentencing guidelines effective November 1, 1989, Mr. Dorrough was sentenced to 235 months incarceration. His sentence was calculated using the base offense level of 34. This base offense level was determined by multiplying the entire 94 liters of the liquid mixture which Mr. Dorrough was using to make P2P by its cocaine equivalency in accordance with the Sentencing Guideline's Drug Equivalency Table, USSG §2D1.1. At the time of his sentencing, a footnote in the drug quantity table provided "the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." USSG §2D1.1(c) comment. (n.*) (1989). In reliance on this language, the prosecution did not produce evidence regarding the precise amount of P2P contained in the liquid mixture. We affirmed Mr. Dorrough's conviction and sentence. *United States v. Dorrough*, 927 F.2d 498 (10th Cir. 1991).

On November 1, 1993, the Sentencing Commission approved Amendment 484 to USSG §2D1.1, comment. (n. 1), which provides: "Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used." USSG App.C, amend. 484. This subsequent modification, which could lower Mr. Dorrough's guideline sentencing range, may be applied retroactively. USSG §1B1.10(a) & (c). Mr. Dorrough filed a motion pursuant to 28 U.S.C. § 2255 claiming, among other things, his sentence should be

recalculated in light of Amendment 484. The district court denied his motion. He appealed the district court's order and we remanded to the district court to determine whether Amendment 484 warranted recalculation of his sentence. *Dorrough* v. *United States,* No. 94-7071, 1995 WL 43595 (10th Cir. Feb. 2, 1995). On remand, the district court conducted a hearing and held:

> You argue that 91 liters of P2P seized at your clandestine laboratory contained waste water that would need to be separated from the controlled substance before it could be used. Upon further review, the Court finds that you were in the process of manufacturing amphetamine when authorities seized the laboratory. The P2P that formed the basis of original offense level computations is a controlled substance recognized as an immediate precursor to the production of amphetamine. The guidelines take into account a percentage of waste in P2P evidenced by the sizeable decrease in drug equivalency ratios.

> The Court adopts by reference the second addendum to the Presentence Report, and I find by a preponderance of the evidence that offense level computation based on 91 liters of P2P is reasonable and proper.

> Based on these findings, the sentence heretofore imposed will not be disturbed.

Mr. Durrough appeals this ruling claiming "the district court erred in reimposing a sentence based upon the entire amount of mixture found at defendant's laboratory, rather than upon the amount of P2P actually present within said mixture.

The retroactive application of a change in the offense level of the Sentencing Guidelines is not required by §1B1.10(a), but rather falls within the district court's discretion. In *United States v. Telman*, 28 F.3d 94, 96 (10th Cir. 1994), we noted "it is apparent from the language of §1B1.10(a)-- i.e., 'may consider'--that a reduction is not mandatory but is instead committed to the sound discretion of the trial court." *See also United States v. Holmes*, 13 F.3d 1217, 1222 (8th Cir. 1994)

3

(holding district court has discretion to apply Amendment 488 retroactively under 1B1.10(a)); *United States v. Connell*, 960 F.2d 191, 197 (1st Cir. 1992) (holding "1.B1.10(a) does not mandate the use of the lesser enhancement, but merely affords the sentencing court discretion to utilize it").  Under the abuse of discretion standard we will not reverse a district court's decision unless we have "a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (internal quotation omitted).

We also noted in *Telman*, that "[i]n determining whether to reduce a defendant's sentence due to a subsequent amendment, 18 U.S.C. § 3582(c) directs the district court to 'consider[] the factors set forth in section 3553(a) to the extent that they are applicable' and determine whether 'reduction is consistent with the applicable policy statements issued by the Sentencing Commission.'"  28 F.3d at 96.  *See United States v. Avila*, 997 F.2d 767, 768 (10th Cir. 1993) (holding district court's power to reduce a sentence in light of a subsequent modification to the sentencing guidelines "is tethered to the factors contained in § 3553(a)").  The factors to be considered under § 3553(a) include:  (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the applicable sentencing range under the guidelines; (5) any pertinent Sentencing Commission policy statement; (6) the need to avoid unwarranted sentence disparities among defendants; and (7) the need to provide restitution to victims.  18 U.S.C. § 3553(a).  There is no requirement that the district court make specific findings regarding each of the above factors as long as it states the reasons for its actions.  *United States v. Lee*, 957 F.2d 770, 774-75 (10th Cir. 1992) (internal quotation omitted).

In this case, the sentencing court reviewed Mr. Dorrough's sentence in light of Amendment 484 and after considering the relevant factors found the amendment did not warrant a change in Mr. Dorrough's sentence. *See Telman*, 28 F.3d at 97 (holding the district court did not abuse its discretion in failing to reduce defendant's sentence when it considered "a number" of the § 3553(a) factors). In particular the court noted the case involved a clandestine laboratory engaged in the process of manufacturing amphetamines, P2P is a controlled substance and that the guidelines take into account a percentage of waste in P2P as evidenced by a sizeable decrease in drug equivalency ratios. The district court also adopted the second addendum to the presentence report in its order. The second addendum recalculated the defendant's sentence in accordance with the amendment and also provided an alternative means of sentencing, as provided by USSG §2D1.1, comment. (n.1), which would result in Mr. Dorrough having the same offense level under the new guidelines as he had under the old. In light of the above record, we do not find the district court abused its discretion in refusing to modify Mr. Dorrough's sentence.

The district court's order is **AFFIRMED**.

No. 95-7098, <u>United States v. Dorrough</u>

**EBEL**, Circuit Judge, concurring.

Because I agree that Mr. Dorrough is not entitled to a reduction in his sentence, I concur in the judgment of the court, although I do so on a ground unrelated to the P2P quantity. I write separately, however, to express my disagreement with the majority's conclusions regarding the retroactive application of Amendment 484 in this case.

The majority opinion assumes the district court decided not to give Amendment 484 retroactive application "after considering the relevant factors" set forth at 18 U.S.C. § 3553(a). The record before us, however, does not provide such a clear picture of the district court's reasoning. Indeed, at first glance, it appears the district court did in fact apply the amendment retroactively. The court adopted by reference the Second Addendum to the Presentence Report, which purported to calculate Mr. Dorrough's sentence "in accordance with the guideline manual in effect November 1, 1994." Because Amendment 484 became effective November 1, 1993, the sentencing court's use of the 1994 version of the guideline manual would indicate that the court at least attempted to apply the amendment retroactively. The majority opinion appears to acknowledge this possibility. <u>See</u> ante at 5 ("[T]he sentencing court reviewed Mr. Dorrough's sentence *in light of Amendment 484*....") (emphasis added).

However, the outcome reached by the district court suggests that the court did not apply the amendment retroactively, or if it did do so, that it erred in its application of the amendment. The district court stated that it was calculating Mr. Dorrough's sentence based

on the entire 91 liter mixture containing P2P, even though Amendment 484 explicitly directs a sentencing court to exclude from the drug quantity calculation those "materials that must be separated from the controlled substance before the controlled substance can be used." U.S.S.G. § 2D1.1, comment. (n.1). Because the 91 liter chemical mixture was seized from Mr. Dorrough's laboratory before processing was completed, no one disputes that it would have been necessary to separate the various chemical by-products from the mixture before the P2P then in the solution could be used for its intended purpose of manufacturing amphetamine. See United States Sentencing Commission, Guideline Manual, App. C., amend. 484 ("The chemicals seized before the end of processing are also not usable in that form because further processing must take place before they can be used."). If the nature of the lab mixture was such that the usable and nonusable materials could not be separated, then Amendment 484 required the district court "to use any reasonable method to approximate the weight of the" P2P in the mixture. U.S.S.G. § 2D1.1, comment. (n.1).[2] Thus, if the district court was attempting to apply Amendment 484, I believe the court erred in calculating Mr. Dorrough's sentence based on the entire 91 liter mixture containing P2P, rather than the actual amount of P2P therein. See United States v. Deninno, 29 F.3d 572, 579 (10th Cir. 1994) ("[T]he full amount of the waste water need not be used in the calculation of quantity of the [controlled substance]."), cert. denied, 115 S. Ct. 1117 (1995); United States v. Levay,

_____

[2] Mr. Dorrough presented the district court with a reasonable method of approximating the amount of P2P in the mixture; namely, a chemist who testified that the chemicals seized from Mr. Dorrough's laboratory could have produced at most 8.85 kilograms, or 19.5 pounds, of P2P.

-2-

76 F.3d 671, 673 (5th Cir. 1996) ("Under the amended guideline, only the actual weight of the controlled substance is applied in calculating the base offense level, not the aggregate weight of any mixture....").

The ambiguity regarding whether the district court in fact applied Amendment 484 retroactively merely underscores a more obvious judgment that can be drawn from the district court's opinion, which is that the district court in any event failed to undertake a proper retroactivity analysis. As the majority correctly observes, whether to give retroactive application to a guideline amendment is a decision that rests within the discretion of the district court after the court evaluates the factors set forth at 18 U.S.C. § 3553(a). Although we have stated in another context that a sentencing court need not "make specific findings relating to each of the [§ 3553(a)] factors considered," United States v. Lee, 957 F.2d 770, 774-75 (10th Cir. 1992) (addressing the factors in connection with a challenge to the revocation of supervised release under § 3583), the sentencing court nevertheless remains obligated to state clearly the reasons for its decision. Id. In many other sentencing areas, we have required district courts to make explicit findings of fact to support their sentence calculations. See, e.g., United States v. Roberts, 14 F.3d 502, 522 (10th Cir. 1993) ("In enhancing a defendant's sentence based on his role in the offense, a district court must make specific factual findings as to that role."); United States v. Molina-Cuartas, 952 F.2d 345, 348 (10th Cir. 1991) ("In order to impose a sentence based on a quantity of drugs, the trial court's factual findings must be determined by a preponderance of the evidence."), cert. denied, 503

U.S. 995 (1992). I see no reason why consideration of a sentence reduction under § 3582(c), which specifically directs the district court to consider the factors set forth in § 3553(a), should be treated any differently. As an appellate court we are always hindered, and often completely prevented, from effectively reviewing the district court's exercise of sentencing discretion if the district court fails to address the statutorily-mandated factors that Congress has said should direct and guide that discretion.

In any event, even if we were not to require the sentencing court to address explicitly the statutory factors, at a very minimum we require the sentencing court to "state the reasons for its action," Lee, 957 F.2d at 775, and it goes without saying that the reasons provided by the court must have some correlation to the statutory factors set forth in § 3553(a), see United States v. Avila, 997 F.2d 767, 768 (10th Cir. 1993) (holding that the district court's power to reduce a sentence in light of a subsequent amendment to the guidelines "is tethered to the factors contained in § 3553(a)"). In my opinion, the district court in this case has failed to comply with even this minimal requirement. The district court's order makes no reference to § 3553(a), nor do any of the court's stated reasons for denying Mr. Dorrough's sentence reduction bear any relation to the criteria set forth in § 3553(a). At one point, the district court did rely on the fact that the sentencing guidelines "take into account a percentage of waste in P2P, evidenced by the sizeable decrease in drug equivalency ratios." R.O.A. Vol. X, p. 7. While this statement may be interpreted as reflecting the district court's concern about sentencing disparities, see 18 U.S.C. § 3553(a) (directing sentencing courts to consider,

inter alia, "the need to avoid unwarranted sentence disparities among defendants"), I do not believe it is a correct statement of the law.

The decreased drug equivalency ratio between amphetamine and P2P cannot be explained on the basis of accounting for "waste" associated with P2P. The drug equivalency ratio remains constant throughout the manufacturing process and yet the amount of "waste" associated with the P2P is much greater earlier in the manufacturing process than it is late in the process. That is, as I understand it, the P2P becomes more concentrated in the mixture as it is being manufactured. Thus, under the district court's interpretation of the guidelines, a defendant is punished more severely earlier in the manufacturing process (when the P2P is more diluted and less usable) than he is later in the process when the manufacturing is complete and the P2P is pure. Contrary to the district court's suggestion, I believe P2P is punished less severely than amphetamine simply because it is not as dangerous a controlled substance. P2P is not an ingestible drug, and additional ingredients must be chemically combined with it in order to manufacture the finished amphetamine product.

Finally, when the § 3553(a) factors are addressed, I am led to conclude that it would be an abuse of discretion to hold that Amendment 484 does not apply retroactively in this case. The factors set forth in § 3553(a) are the following: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the applicable sentencing range under the guidelines; (5) any pertinent Sentencing Commission policy statement; (6) the need

to avoid unwarranted sentence disparities among defendants; and (7) the need to provide restitution to victims. 18 U.S.C. § 3553(a). Applied to Mr. Dorrough's case, I believe the first four factors and the seventh factor are either neutral or irrelevant. The district court emphasized that the nature and circumstances of the offense involved a clandestine laboratory engaged in the process of manufacturing amphetamines. However, because all illegal drug labs manufacture illegal substances and are presumably clandestine, it is difficult to understand how this supports a finding against retroactivity. The sixth factor actually supports applying Amendment 484 retroactively; a defendant sentenced under the pre-Amendment 484 guidelines could receive a much harsher sentence for precisely the same conduct as a defendant sentenced after the effective date of Amendment 484. See, e.g., United States v. Levay, 76 F.3d 671, 673 (5th Cir. 1996) (noting that application of Amendment 484 would reduce that particular defendant's base offense level by 20 points). The fifth factor also may support retroactivity because the fact that U.S.S.G. § 1B1.10(c) includes Amendment 484 in relatively select company of guideline amendments that may be applied retroactively suggests perhaps some threshold presumption of retroactivity.

While I part with the majority's conclusions regarding the retroactivity and Amendment 484 issues, I nevertheless concur in the judgment. The Second Addendum to the Presentence Report, which the district court adopted by reference into its order, offers an alternative (and I believe a correct) method for sentencing Mr. Dorrough that results in a sentence identical to that originally imposed. The sentencing guidelines provide that "[i]f the

offense involved both a substantive drug offense and an attempt or conspiracy, the total quantity involved shall be aggregated to determine the scale of the offense." U.S.S.G. § 2D1.1, comment. (n.12) (parenthetical omitted). Further, where the amount of drugs seized does not reflect the scale of the offense, the guidelines direct the sentencing court to "approximate the quantity of the controlled substance . . . consider[ing], for example, . . . the size or capability of any laboratory involved." Id.; see also United States v. Sturmoski, 971 F.2d 452, 456, 462 (10th Cir. 1992) (estimating drug quantity based on the capability of the laboratory and the amount of precursor chemicals seized); United States v. Short, 947 F.2d 1445, 1456-57 (10th Cir. 1991) (estimating drug quantity based on characteristics of drug laboratory), cert. denied, 503 U.S. 989 (1992). Because Mr. Dorrough was convicted of attempt and conspiracy to manufacture *amphetamine* (in addition to possession of P2P), he may be sentenced for the approximate amount of amphetamine he intended to manufacture. At the original sentencing hearing, the government criminalist testified that Mr. Dorrough's laboratory was capable of producing approximately 100 pounds of amphetamine. See Second Addendum to Presentence Report. Based on this estimate, Mr. Dorrough would still have been assigned a base offense level of 34 under U.S.S.G. § 2D1.1(c)(3). For this reason, I do not believe Mr. Dorrough is entitled to a reduced sentence and thus I concur in the judgment of the court.