**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Mary ROLANDE–GABRIEL,**
**Defendant–Appellant.**

**No. 90–5500.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 14, 1991.

---

\* Hon. Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

Alison M. Igoe, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Dexter W. Lehtinen, U.S. Atty., Raymond A. Pierson, Linda Collins Hertz and Carol E. Herman, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before EDMONDSON, Circuit Judge, RONEY *, Senior Circuit Judge, and PITTMAN **, Senior District Judge.

PITTMAN, Senior District Judge:

Appellant Mary Rolande–Gabriel pled guilty to importation of cocaine in violation of 21 U.S.C. §§ 952(a)(1) and 960(a)(1). The district court assigned appellant a category 20 under the sentencing guidelines. Rolande–Gabriel asserts the district court erred in using the weight of an unusable non-drug liquid in calculating her base offense level under the sentencing guidelines. Roland–Gabriel further claims that the district court erred in refusing to dismiss the indictment after the government destroyed evidence in the case.

## I. FACTS

On February 4, 1990, Rolande–Gabriel arrived in Miami, Florida from Port–au–Prince, Haiti. A Customs Service canine patrol detected drugs on Rolande–Gabriel while she was in the Miami airport. Based on the canine detection, Rolande–Gabriel was searched by Customs officials and was found to have within her clothing sixteen plastic bags containing a liquid substance. A field test revealed the liquid contained cocaine.

On March 22, 1990, the government filed with the district court a laboratory analysis of the contents of the bags. The report stated the gross weight of the contents was 241.6 grams. The government's chemist stated that when he received the bags, the contents were in a "liquid form" with "some white powder, all in there, almost

---

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

like a real saturated salt solution, but not all [of] the salt was dissolved." The chemist emptied the bags of their contents into a container and established the weight as 241.6 grams. After weighing the contents, the chemist extracted a powder substance from the liquid and disposed of what he characterized as "liquid waste." The remaining powder weighed 72.2 grams. An analysis of the powder revealed that it was comprised of 7.2 grams of cocaine base and 65 grams of a cutting agent.

Rolande–Gabriel filed a motion to dismiss the indictment against her due to the destruction of the liquid. The district court denied the motion on grounds that Rolande–Gabriel did not suffer prejudice from the destruction of the liquid. Rolande–Gabriel subsequently pled guilty to importation of cocaine. Pursuant to U.S.S.G. § 2D1.1 (1990), the district court calculated Rolande–Gabriel's base offense level category at 20. The court based its calculation on the gross weight of the contents of the bags. The district court then granted appellant a 2-level reduction for acceptance of responsibility and another 2-level reduction for minor involvement in the overall offense. Based on the foregoing, the district court sentenced Rolande–Gabriel to 21 months in prison with 3 years supervised release. She has remained incarcerated since February 4, 1990.

## II. DISCUSSION

Rolande–Gabriel argues that under U.S.S.G. § 2D1.1, the district court should not have included the weight of the liquid carrier medium in determining her base offense level. Section 2D1.1 provides that a defendant's sentence is to be calculated based on the weight of the controlled substance or mixtures containing a controlled substance. It is Rolande–Gabriel's position that the liquid was merely a carrier medium unrelated to the cocaine's use, and that the drug was in an unusable form until the powder was extracted from the liquid. Rolande–Gabriel argues that the term "mixture" does not include the liquid carrier medium used in this case because the drug was not usable. According to Rolande–Gabriel, widely divergent sentences will arise

from the inclusion of unusable carrier mediums. For example, a defendant with one ounce of usable cocaine and a defendant with one ounce of usable cocaine mixed with an unusable liquid having a total weight of ten ounces, would receive substantially different sentences for essentially the same offense. Rolande–Gabriel's argument is premised on the contention that the inclusion of the weight of the liquid would be contrary to the sentencing guidelines' stated purpose of sentencing uniformity.

Section 2D1.1 states that "[t]he weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1, n. 1 (1990). The commission's comments to section 2D1.1 state " 'Mixture or substance' as used in this guideline has the same meaning as in 21 U.S.C. § 841." *Id.* at 2.48. The government contends this language requires that the weight of the liquid carrier medium, without regard to its use, be included in determining Rolande–Gabriel's sentence. The Eleventh Circuit has applied the language of 21 U.S.C. § 841 and section 2D1.1 in two cases. In addition to the arguments of the parties and these Eleventh Circuit cases, we also must address a recent United States Supreme Court decision applying 21 U.S.C. § 841 and U.S.S.G. § 2D1.1. *United States v. Chapman,* — U.S. —, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). Because *Chapman* was not presented to this court by the parties in their briefs or at oral argument, we will address it after our discussion of the parties' arguments and the previous Eleventh Circuit cases.

In *United States v. Smith,* 840 F.2d 886 (11th Cir.1988), the Eleventh Circuit applied the "substance or mixture" language of 21 U.S.C. § 841. Smith had been convicted of knowingly and intentionally possessing with intent to distribute a substance containing cocaine base. *Id.* at 888. The evidence at trial established that Smith was in possession of 9.2 grams of a mixture containing cocaine base. *Id.* Under 21 U.S.C. § 841, a defendant receives enhanced punishment if he is found to have 5 grams or

more of a mixture containing cocaine. Smith challenged his conviction and sentence, asserting that the term "mixture" was unconstitutionally vague. *Id.* at 888–89. The Eleventh Circuit, in upholding Smith's conviction, held that the statutory language was clear, not ambiguous. *Id.* at 889. The court held that under 21 U.S.C. § 841, the entire weight of the substance, not the purity of the drug, was the determinative factor. *Id.* at 888–89. In reaching this conclusion, the court stated that "absent a clearly expressed legislative intent to the contrary, we take the plain meaning of 'mixture' as conclusive." *Id.* at 889 (citation omitted). The court further noted that "the legislative intent supports our holding that the plain meaning of 'mixture' is conclusive." *Id.* at 889, n. 2 (relying upon H.R.Rep. No. 845 (part I), 99th Cong., 2d Sess. 12 (1986)).

In *United States v. Lazarchik,* 924 F.2d 211 (11th Cir.1991), the defendant contended on appeal that the district court erred in using the gross weight of the drugs he sold rather than their net or pure weight. *Id.* at 213. Lazarchik argued that, based on the prefatory phrase to the Drug Quantity Table of section 2D1.1, "Consistent with the Guidelines," the guidelines had to be applied consistent with the Anti–Drug Abuse Act of 1986. Lazarchik claimed the "mixture" language of 21 U.S.C. § 841 should not apply to his offenses since the Anti–Drug Abuse Act of 1986 did not apply the "mixture" language to pharmaceutical drugs. According to Lazarchik, when the Sentencing Commission incorporated the "mixture" language of 21 U.S.C. § 841 into the guidelines, it also incorporated the distinction between pharmaceutical drugs and other drugs into the guidelines. 924 F.2d at 213–214.

The court disagreed with Lazarchik's analysis and held that "the first sentence of the Guidelines footnote unambiguously requires total weight to be used in calculating the equivalency of all controlled substances." *Id.* at 214. The court held that the prefatory phrase does not create an ambiguity in U.S.S.G. § 2D1.1. with regard to pharmaceutical drugs because the language of the footnote applied to all drugs. *Id.*

The government contends that *Smith* and *Lazarchik* support the position that section 2D1.1 should be given a plain meaning interpretation; however, these cases are not dispositive of the issues in the present case. In both cases, the drug mixture was in a usable form, i.e. usable by or marketable to the consumer. In the present case, the drug was in an unusable mixture, i.e. unusable or unmarketable to the consumer, at the time of arrest. A mixture composed of an unusable carrier medium and an usable controlled substance is addressed for the first time by this court.

*Smith* is also distinguishable from this case on other, additional grounds. The issue in *Smith* was whether the term "mixture" in 21 U.S.C. § 841 was unconstitutionally vague, not whether unusable carrier mediums are covered by the term "mixture." *Smith,* 840 F.2d at 888–89. Therefore, the holding of that case is limited to the constitutional vagueness issue. In addition, *Smith* predates the enactment of the Sentencing Guidelines. Therefore, in *Smith,* this court was not required to consider the extensive public policy concerns of the guidelines when it determined the meaning of "mixture."

*Lazarchik* is equally distinguishable from the present case. Although the court held the language of the footnote to be unambiguous, its holding dealt with whether a specific drug, a controlled substance mixed with cough syrup, was covered by section 2D1.1, and not with the meaning of "mixture." *Lazarchik,* 924 F.2d at 214. The unambiguous language to which the court in *Lazarchik* was referring was the part of the footnote which states that all controlled substances are within the coverage of the Drug Equivalency Table. *Id.* The *Lazarchik* opinion at no point addresses the meaning of "mixture." We further note that *Lazarchik* departed from 21 U.S.C. § 841's distinction favoring pharmaceutical drugs in favor of the language of the Sentencing Guidelines, despite language in section 2D1.1 which seemingly indicates that it should be applied consist-

ently with 21 U.S.C. § 841. These cases are distinguishable and we are, therefore, not bound by them in deciding this case.

The purposes for the Sentencing Guidelines are clearly documented. U.S.S.G., Ch. 1, Pt. A, at 1.1–.10 (1990). In the statement of Statutory Mission, the Sentencing Guidelines state that they "further the basic purposes of criminal punishment: deterrence, incapacitation, *just punishment,* and rehabilitation. The [Sentencing Reform] Act delegates broad authority to the Commission *to review and rationalize* the federal sentencing process." *Id.* at 1.1 (emphasis added). The Policy Statement of the Sentencing Guidelines states that "Congress sought *reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders.* [Congress also] sought proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity." *Id.* at 1.2 (emphasis added). The Policy Statement goes on to note that the Commission deliberately avoided a system of broad discretion in sentencing ranges because to do so

> would have risked correspondingly broad disparity in sentencing,.... Such an approach would have risked a return to the wide disparity that Congress established the Commission to reduce and would have been contrary to the Commission's mandate set forth in the Sentencing Reform Act of 1984.

*Id.* at 1.3. In order to bring about a coherent system of rational and uniform sentencing, the Commission chose to adopt an emperical method of sentencing. *Id.*

Balanced against the Sentencing Guidelines' clearly stated policy objective of rational and uniform sentencing is a commission comment to section 2D1.1. The comment provides that the term "mixture" has the same meaning as it does in 21 U.S.C. § 841, which does not differentiate between various types of mixtures. The court notes that the comment to U.S.S.G. § 2D1.1 is merely a statement indicating the commission's intent.

The Sentencing Guidelines Statutory Mission and Policy Statement clearly and plainly indicate that the primary purpose of the guidelines system is to create a scheme of "uniform and rational" sentencing. In applying the term "mixture" to the facts of this case, we are faced with a conflict between the commission's comment indicating that the term "mixture" means the same as it does in 21 U.S.C. § 841, and the Sentencing Guidelines' well-documented purpose of rationality and uniformity in sentencing. If we strictly adhere to the committee's comment, then all mixtures are to be included, despite the fact that disparate and irrational sentences will result. If we read "mixture" in conjunction with the purposes behind the Sentencing Guidelines, then section 2D1.1 should be applied in a manner which creates the greatest degree of uniformity and rationality in sentencing. *See Baxstrom v. Herold,* 383 U.S. 107, 111, 86 S.Ct. 760, 763, 15 L.Ed.2d 620 (1966) (legislative classifications should have some relevance to the purpose for which they are made). Faced with a choice between contradictory statements of intent and policy by the Guidelines Commission, we adopt the more rational alternative.

■ The inclusion of the weight of unusable mixtures in the determination of sentences under section 2D1.1 leads to widely divergent sentences for conduct of relatively equal severity. In the present case, the appellant was sentenced based on a total weight of 241.6 grams, despite the fact that only 72 grams of the mixture constituted a usable or consumable drug mixture. This hyper-technical and mechanical application of the statutory language defeats the very purpose behind the Sentencing Guidelines and creates an absurdity in their application: the disparate and irrational sentencing arising out of a "rational and uniform" scheme of sentencing.

Despite this obvious lack of rationality, we would be obliged to affirm Rolande–Gabriel's sentence if the Supreme Court's decision in *United States v. Chapman,* —— U.S. ——, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), is dispositive of the issues presented

in this case.[1] We are not required, however, to affirm the sentencing decision of the district court because of the significant distinguishing factors between the present case and *Chapman.*

In *Chapman,* the Supreme Court held that the weight of the carrier medium blotter paper should be included along with the weight of LSD under the "mixture or substance" language of 21 U.S.C. § 841 and the Sentencing Guidelines. — U.S. —, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). The Court in *Chapman* found that a plain meaning interpretation of "mixture" does not create an irrational result in the context of LSD and standard carrier mediums; however, in the present case it would be irrational for the court to fail to distinguish between usable and unusable drug mixtures in applying Sentencing Guideline § 2D1.1.

In *Chapman,* the appellants were convicted of selling 10 sheets of blotter paper impregnated with LSD in violation of 21 U.S.C. § 841(a). *Chapman,* 111 S.Ct. at 1922. The district court included the combined weight of the blotter paper and the LSD to determine the weight of the drug used in calculating the appellants' sentences. Although the weight of the LSD alone was 50 milligrams, the combined weight of the LSD and blotter paper was 5.7 grams. *Id.* at 1922. The 5.7 grams resulted in the imposition of a mandatory minimum sentence of five years as required by 21 U.S.C. § 841(b). *Id.* The entire weight was also used by the district court to determine the appellants' base offense levels under the Sentencing Guidelines. *Id.* The Seventh Circuit, sitting *en banc,* affirmed the sentences imposed on the appellants by the district court. *United States v. Marshall,* 908 F.2d 1312 (7th Cir.1990).

On appeal to the Supreme Court, the appellants contended either that the statute should be interpreted to not include the weight of the carrier medium blotter paper or that the Court should hold the statute

violates due process. *Chapman,* 111 S.Ct. at 1923–24. The Supreme Court, in affirming the appellants' sentences, held the rule of lenity did not require the Court to depart from the plain meaning of 21 U.S.C. § 841. *Id.* at 1926. The Court further held that, given the facts of the case, a plain meaning interpretation of "mixture" was rational. *Id.* at 1927. The Court also held that inclusion of the weight of a standard carrier medium such as blotter paper in determining a defendant's sentence does not violate due process. *Id.* at 1926–28.

The Court found the appellants' interpretation of the statute, which would include only the net weight of the LSD, to be implausible given the history and structure of 21 U.S.C. § 841. *Chapman,* 111 S.Ct. at 1924. In particular the Court noted that

> Congress adopted a 'market-oriented' approach to punishing drug trafficking, under which the total quantity of what is distributed, rather than the amount of pure drug involved, is used to determine the length of sentence.... It intended the penalties for drug trafficking to be graduated according to the weight of the drugs [in] whatever form they [are] found—cut or uncut, pure or impure, *ready for wholesale or ready for distribution at the retail level.*

*Id.* at 1926 (emphasis added).

The Court stated that a plain "dictionary meaning" should be given to the term "mixture." *Id.* at 1926 (quoting 9 *Oxford English Dictionary* 921 (2d ed. 1989)). In so holding, the Court specifically rejected several arguments presented by the appellants. The appellants argued that a strict dictionary definition of the term "mixture" could lead to the inclusion of the weight of containers and packaging, such as cars and glass vials. *Id.* The Court rejected this argument, stating that "the term does not include LSD in a bottle, or LSD in a car, because the drug is easily distinguished from, and separated from, such a 'container.'" *Id.*

---

1. *Chapman* was argued to the Supreme Court approximately one month before the present case was argued to this court. The Supreme Court issued its opinion in *Chapman* on May 30, 1991.

The appellants also contended that the rule of lenity required that the ambiguity in the term "mixture" should be construed in their favor. *Chapman,* 111 S.Ct. at 1926. While the Court recognized that the rule of lenity applies where there is a grievous ambiguity of uncertainty in the language and structure of an act, it held that "a straightforward reading of § 841(b) does not produce a result 'so absurd or glaringly unjust' as to raise a 'reasonable doubt' about Congress' intent." *Id.* (citations omitted).

In *Chapman,* the LSD and other drugs in carrier mediums considered by the Court were usable, consumable, and ready for wholesale or retail distribution when placed on standard carrier mediums, such as blotter paper, gel, and sugar cubes. The Supreme Court notes this key fact in its decision, stating that "the LSD cannot be distinguished from the blotter paper, nor easily separated from it. Like cutting agents used with other drugs that are ingested, the blotter paper, gel, or sugar cube carrying LSD can be and often is ingested with the drug." *Id.* at 1926.

While LSD is ready for sale, use, or consumption when it is placed on standard carrier mediums such as blotter paper, gel, or sugar cubes, the cocaine mixture in this case was obviously unusable while mixed with the liquid waste material. Prior to subjecting the contents of Rolande–Gabriel's bags to a chemical extraction process, the cocaine mixture was not ready for retail at the street-level or for wholesale by the big-time drug kingpin. The Court stated the inclusion of the weight of standard carrier mediums is rational because standard carrier mediums facilitate the use, marketing and access of LSD and other drugs. *Chapman,* 111 S.Ct. at 1927. The liquid waste in this case, however, did not accomplish any of these purposes. The inclusion of the carrier medium of unusable liquid waste in this case for sentencing is irrational.

The liquid found in Rolande–Gabriel's bags is similar to the "packaging" materials referred to by the Supreme Court in *Chapman. Id.* at 1926. The cocaine mixture in the present case was "easily distinguished from, and separated from" its liquid waste carrier medium. The government chemist easily distinguished the liquid from the drug powder and its cutting agent, characterizing it as "non-drug waste." Following extraction of the "waste" material, the chemist threw the liquid away.

The distinction we recognize is consistent with the Supreme Court's analysis in *Chapman.* The entire weight of drug mixtures which are usable in the chain of distribution should be considered in determining a defendant's sentence. This case does not conflict with that proposition because Rolande–Gabriel's sentence will be based on the gross weight of the *usable* drug mixture in this case.

█ In addition to the substantial factual differences between the two cases, we think that the rule of lenity should be applied to the present case in order to prevent an "absurd and glaringly unjust result" as referred to by the Court in *Chapman.* In that case, the Supreme Court declined to apply the rule of lenity, holding that the inclusion of the weight of blotter paper in determining a defendant's sentence under 21 U.S.C. § 841 does not lead to an absurd or unjust result. *Id.* at 1926. Although it is logical to base sentences upon the gross weight of usable mixtures, it is fundamentally absurd to give an individual a more severe sentence for a mixture which is unusable and not ready for retail or wholesale distribution while persons with usable mixtures would receive far less severe sentences. For example, Rolande–Gabriel's sentence was based on a weight of 241.6 grams, despite the fact that only 72 grams of the mixture were usable; however, a defendant possessing a usable mixture of cocaine mixed with a cutting agent weighing 75 grams would receive a significantly smaller sentence than Rolande–Gabriel. This is manifestly unjust and defeats the Sentencing Guidelines' stated policy of sentencing uniformity and proportionality.

█ In *Chapman,* the Supreme Court recognized that different situations may lead to different interpretations, stating

that "hypothetical cases can be imagined involving heavy carriers and very little [drug], those cases are of no import in considering a claim by persons such as petitioners, who used a standard [drug] carrier." *Id.* at 1928. The present case presents a hypothesis which has become reality. There are real facts present in this case that are dramatically different from *Chapman* which this court cannot overlook. Not only is this case distinguishable on the facts, we hold that the rule of lenity should be applied to the statute to avoid absurdity and irrationality in the application of the Sentencing Guidelines. We therefore hold that the term "mixture" in U.S.S.G. § 2D1.1 does not include unusable mixtures. This distinction is logical and rational, given the aforementioned differences between mixtures which are usable and ones which are unusable.

 Rolande–Gabriel also asserts the district court erred in refusing to dismiss the indictment after the government destroyed the liquid portion of the contents found in the bags. Rolande–Gabriel asserts that she was prejudiced by the destruction of the liquid because she was unable to analyze it, and because her sentence was based on evidence which was never admitted before the court. A defendant in a drug prosecution has a right to have an expert of his choosing perform an independent analysis on the seized substance. *United States v. Nabors*, 707 F.2d 1294, 1296 (11th Cir.1983). The government additionally has a concomitant obligation to try in good faith to preserve important material. *Armstrong v. Collier*, 536 F.2d 72, 78 (5th Cir.1976). Where the material has been destroyed in spite of the government's good faith attempt to preserve it, testimony as to the nature of the material need not be suppressed absent some showing that the testing of the material by another expert would have been reasonably likely to produce evidence favorable to the defendant. *Nabors*, 707 F.2d at 1297. Absent some proof that the destroyed evidence was exculpatory or that the evidence was destroyed in bad faith, the case should not be dismissed. *United*

*States v. Doggett*, 906 F.2d 573 (11th Cir. 1990).

 Rolande–Gabriel has failed to show that she suffered prejudice from the destruction of the liquid. Given that the evidence was only used at the sentencing hearing, the only use by the government of the liquid would have been to establish the overall weight of the contents of the bags. The overall weight of the contents of the bags is not relevant to appellant's sentence, only the weight of usable drug mixtures. A chemical analysis of the discarded liquid by Rolande–Gabriel would have had no effect on her sentence. In addition, there is no evidence that the government destroyed the liquid in bad faith. The destruction of the liquid would not have aided the government had this case gone to trial; it had no effect on the outcome of the case after Rolande–Gabriel pled guilty to importation. We therefore conclude that the district court did not err in refusing to dismiss the indictment against Rolande–Gabriel.

## III. CONCLUSION

The evidence clearly establishes that the original mixture found within the bags was not readily usable. The appellant should have been sentenced based on the 72.2 grams of usable powder consisting of cutting agent and cocaine base. We, therefore, hold that the district court erred in basing appellant's sentence upon the weight of the unusable liquid mixture. The appellant's sentence is VACATED and this cause is REMANDED for re-sentencing in light of our opinion above. The denial of the motion to dismiss the indictment is AFFIRMED.