[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 15, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12535
Non-Argument Calendar

_____

D. C. Docket No. 07-20089-CR-CMA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANDRES FELIPE CUETO BORQUE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 15, 2008)**

Before MARCUS, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Andres Felipe Cueto-Borque appeals his sentence of 46 months'

imprisonment, imposed following his guilty plea for importation of and possession

with intent to distribute heroin, in violation of 21 U.S.C. §§ 952 and 841 respectively. After a thorough review of the record, we affirm.

Borque pleaded guilty without a written plea agreement, admitting that he transported heroin from the Dominican Republic by ingesting 48 pellets of drugs. Although Borque admitted that the total weight was 587 grams of a mixture and substance containing heroin, he contested his responsibility for this amount because the usable amount of heroin was only 6.4 grams; the rest was diluted and unusable non-narcotics caffeine, aspirin, and acetaminophen.

According to the presentence investigation report ("PSI"), the base offense level was 28 in light of the 587 grams of heroin. With the applicable reductions, the total adjusted offense level was 23. Borque had a criminal history category I, which resulted in a guidelines range of 46 to 57 months' imprisonment.

Borque objected to, inter alia, the amount of drugs for which he was held accountable. Although he conceded that in Chapman v. United States, 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), the Supreme Court instructed that the entire amount should be counted, he argued that, under United States v. Rolande-Gabriel, 938 F.3d 1231 (11th Cir. 1991), and United States v. Jackson, 115 F.3d 843 (11th Cir. 1997), the court could have considered only the amount of actual drugs and not the amount that was unmarketable. The government

responded that the case was controlled by United States v. Segura-Baltazar, 448 F.3d 1281 (11th Cir. 2006).

At sentencing, the court considered the objections and was persuaded by the government's analysis. The court adopted the PSI guidelines calculations, stated that it had considered the sentencing factors in 18 U.S.C. § 3553(a), and sentenced Borque to 46 months' imprisonment on each count, to run concurrently.

Borque now appeals, challenging the court's calculation of the amount of drugs in light of the small amount of usable drugs.[1] According to Borque, the government failed to prove the amount of drugs by a preponderance of the evidence.[2]

The government responds that the court was required to consider the entire weight of the drug mixture, and it notes that Borque admitted that the net weight was 587 grams of a mixture or substance containing heroin.[3] It asserts that it was

---

[1] We will not consider the other arguments Borque raises for the first time in his reply brief. United States v. Dicter, 198 F.3d 1284, 1289 (11th Cir. 1999).

[2] Borque did not make this argument before the district court, and therefore we review for plain error. United States v. Hall, 314 F.3d 565, 566 (11th Cir. 2002). Here, Borque cannot show that the court plainly erred or that the error affected his substantial rights, as there was no indication the court would have given him a lesser sentence but for the error.

[3] Contrary to the government's assertion, Borque did not admit the amount of drugs at the change-of-plea hearing; he conceded that the total weight was 587 grams with only 6.4 grams of heroin and he reserved the right to challenge the amount of drugs for which he was held accountable.

prepared to call the forensic chemist to testify to the amount.[4]

We review a district court's application of the guidelines to the facts de novo and all factual findings for clear error. United States v. Kinard, 472 F.3d 1294, 1297 n.3 (11th Cir. 2006); United States v. Hromada, 49 F.3d 685, 688 (11th Cir. 1995). Although the Sentencing Guidelines are no longer mandatory after United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), district courts must continue to determine the appropriate guidelines sentencing range under the law as they did prior to Booker. Under that law, we must interpret the text of the Guidelines in light of the corresponding Commentary and Application Notes, which "are binding on the courts unless they contradict the plain meaning of the text of the Guidelines." United States v. Wilks, 464 F.3d 1240, 1245 (11th Cir. 2006) (internal quotations and citation omitted).

Under U.S.S.G. § 2D1.1, the offense level is determined based on the amount of drugs involved. U.S.S.G. § 2D1.1(a)(3). The commentary explains that, "[u]nless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance. U.S.S.G. § 2D1.1, "Notes to Drug Quantity Table, Note A." The commentary has not specified any other instructions

---

[4] The record does not reflect that the government offered to call a witness on this issue.

with respect to heroin.  See id. Notes B-I.

In Chapman, the Supreme Court held that it is proper to include the weight of a cutting agent when determining the total weight of a "mixture or substance containing a detectable amount" of a particular drug. 500 U.S. at 459-60 (quoting 21 U.S.C. § 841(b)(1)(A)).  The Court acknowledged that "[i]n some cases, the concentration of the drug in the mixture is very low," but nevertheless determined that Congress intended for the entire mixture or substance to be weighed so "long as it contains a detectable amount" of the drug.  Id. at 459-61 ("Congress adopted a 'market-oriented' approach to punishing drug trafficking, under which the total quantity of what is distributed, rather than the amount of pure drug involved, is used to determine the length of the sentence.").  In reaching that conclusion, the Court described a "mixture" in these terms:

> A "mixture" is defined to include "a portion of matter consisting of two or more components that do not bear a fixed proportion to one another and that however thoroughly commingled are regarded as retaining a separate existence." A "mixture" may also consist of two substances blended together so that the particles of one are diffused among the particles of the other.

Id. at 462 (citation omitted).  The Court distinguished a "mixture" from a "container," such as a bottle or a car, from which a drug is easily distinguished and separated.  Id. at 462-63.

Borque contends that this case is controlled by Jackson, in which this court

5

considered a package that contained some 1,004 grams of sugar and 10 grams of cocaine. The sugar was not used as a cutting agent, but was instead utilized "to trick a purchaser into thinking it was cocaine." 115 F.3d at 848. A chemist testified that the cocaine was probably placed on the surface of a block of sugar, and that it likely would not have been detectable if mixed with the sugar. Moreover, the chemist and a police officer testified that the cocaine, as packaged, would not have been marketable on the street. Id.

Notably, in Jackson, the drugs were not mixed with a cutting agent and were not marketable or usable. The block of sugar in Jackson, which was essentially used to carry the cocaine, is more analogous to a container than a mixture. See Chapman, 500 U.S. at 462-63. Therefore, Jackson does not suggest that the weight of the cutting agent should have been excluded. See United States v. Grant, 397 F.3d 1330, 1336 (11th Cir. 2005) ("We conclude that the district court should use the weight of the liquid LSD [which includes the water carrying medium] in applying Grant's statutory minimum sentence.").

Borque also relies on Rolande-Gabriel. In that case, the mixture contained 7.2 grams of cocaine base and 65 grams of cutting agent. The district court calculated the sentence based on the total weight of the mixture, but on appeal, this court vacated and remanded, concluding that the weight of unusable mixtures

6

should not be counted. The court held that "[t]he entire weight of drug mixtures which are usable in the chain of distribution should be considered in determining a defendant's sentence." (Emphasis added). In so holding, the court noted the sentencing disparity that would result from considering the entire amount of drugs when only a small portion was usable. 938 F.2d at 1237

The government argues that this case is controlled by Segura-Baltazar, in which the defendant argued that the cutting agent had diluted the mixture such that it was not marketable or usable. The district court rejected that claim, found no evidence that the drugs were not marketable, and imposed a sentence based on the entire amount of drugs. 448 F.3d at 1293. On appeal, this court affirmed, and distinguished Jackson on the ground that Jackson did not involve a cutting agent but rather considered whether the other substance was used to package the drugs. The court also rejected Rolande-Gabriel without explanation. Id. at 1293.

None of the cases cited by the parties is directly on point. Unlike Jackson, the other substances in the instant case were not used as a container. And unlike Segura-Baltazar or Rolande-Gabriel, there was no testimony or factual findings that the mixture of drugs was marketable or usable. Moreover, these two cases reached opposing outcomes based on similar sets of facts, and the court did not distinguish Rolande-Gabriel in reaching its holding in Segura-Baltazar. Thus, we

decline to apply these cases to the instant case, and hold that the outcome of this case is controlled by <u>Chapman</u> and the guidelines commentary.

Accordingly, we conclude the district court properly determined the amount of drugs for which Borque was held responsible.

AFFIRMED.