On Return to Remand 

JOINER, Judge.
Gary Paul Schreiner appeals his conviction for trafficking in methamphetamine, see § 13A-12-231(ll)a., Ala.Code 1975, and his resulting sentence, as a habitual *1239 offender, to life imprisonment.[1] We affirm. •

Facts and Procedural, Bistoury

On May 23, 2014, Schreiner was indicted for trafficking in methamphetamine. The indictment charged that Schreiner had possessed “methamphetamine or a mixture containing methamphetamine, in excess of twenty-eight (28) grams but less than five hundred (500) grams.” (C. 15.)
On October 1,2014, Schreiner proceeded to trial. At trial, the State’s evidence tended to establish the following: On June 14, 2012, Joseph Goff, a corporal with the Mobile Police Department, was serving warrants for the United States Marshal Service and went to a residence in Satsuma, Alabama, to serve a warrant on Schreiner. Cpl. Goff and another law-enforcement officer went to the back of the residence while another officer went to the front of the residence. According to Cpl. Goff, Cpl. Goff knocked on the back door of the residence, Schreiner came to the door, and Cpl. Goff took Schreiner into custody. Schreiner- told Cpl. Goff that there was another person — Schreiner’s cousin — in the residence. Cpl. Goff “gave [Schreiner’s cousin] orders to come out of the back. He was in a back bedroom. After a couple of minutes ... he came to the door and was taken outside and detained.” (Rl.28-29.)[2]
According to Cpl-. Goff, the following then occurred:
“Schreiner didn’t have’on any shoes or a shirt. He asked me to grab him a pair of tennis shoes. Right next to the bed there were two pair of tennis shoes. I picked 'one of them up and he said, ‘No, not those, the other shoes.’ I picked up the other set of shoes and checked them to make sure there were no weapons or illegal substances inside. In one shoe there was; three bags of what appeared to be methamphetamine and in the other shoe there was a set of electronic scales.”
(R1.29.) The substance Cpl. Goff believed to be methamphetamine was granular.
After finding what he believed to be methamphetamine in Schreiner’s shoe, Cpl. Goff contacted Deputy Raylene Busby and Deputy Greg O’Shea of the Mobile County Sheriffs Office Narcotics Unit. Deputy Busby and Deputy O’Shea both responded to Schreiner’s residence and, from that point, took over the. investigation.
■ When she arrived at Schreiner’s residence, Deputy Busby asked those who occupied the residence for consent to search the residence.. According to Deputy Busby, she obtained consent to search the residence “from all but one of the occupants.”[3] *1240 Because one of the occupants of the residence objected to the search, Deputy Busby obtained a search warrant to search the residence. After obtaining the search warrant,. Deputy Busby and Deputy O’Shea began searching the residence.
During the search of the residence, Deputy Busby and Deputy O’Shea found several items that were, in Deputy Busby’s opinion, used-in the manufacture of methamphetamine. Deputy Busby stated that she also found “a glass drinking jar that ha[d] a coffee filter on top of it and it ha[d] meth oil in it.” (R1.39.) According to Deputy Busby, “meth oil” is a “liquid substance” that is “highly toxic.” Both the granular substance that was found in Schreiner’s shoe and' the “meth oil” were sent to the Alabama Department of Forensic Sciences (“DFS”) for testing.
According to the DFS report on the substance and the oil, the granular substance found in Schreiner’s shoe tested positive for both methamphetamine and pseudoephedrine and weighed approximately 1.439 grams, and! the “meth oil” tested positive for methamphetamine and pseudoephedrine and weighed approximately 151.91 grams.
On cross-examination, Deputy Busby testified as follows regarding the “meth oil”:
“[Schreiner’s counsel]: And in this analysis we have methamphetamine and pseudoephedrine, so there is actually two components [of the meth oil] that we know of. We know there’s a presence of methamphetamine and we know there is a presence of pseudoephedrine;. correct?
“[Deputy Busby]: That’s when we ask them — or request, whenever I write out my things to test for, yes, sir;
“[Schreiner’s counsel]: Now, the weight that’s detailed in this report is actually the total weight of that liquid substance; correct?
“[Deputy Busby]: Yes, sir. What I do whenever I—
“[Schreiner’s counsel]: Again, explain that to the jury, I apologize.
“[Deputy Busby]: Okay. Whenever I take a sample, as you see this glass jar that’s inside of this, we take our sample on the scene. Once I get back to my Office, we have an empty bottle, same bottle as these with the lid and all. I’ll take it and- put it on a scale, a digital scale that we have at the office. I’ll tare it — t-a-r-e—it out-to zero, and then I’ll place this bottle on that weight to give me the approximate weight[1] of the liquid inside of the bottle or if it’s sludge, whichever the case may be.
“[Schreiner’s counsel]: And in this case, I believe your initial weighing of this was just a little bit different bút right about in the ballpark of the actual weight done by DFS; correct?
“[Deputy Busby]: I think mine was 153, somewhere along in there.
“[Schreiner’s counsel]: Sure. And I’m not trying to say that is a big deal or anything, but we’re in the ballpark as far as weight?
“[Deputy Busby]: Yeah. [1]
“[Schreiner’s counsel]: All right. But for purposes of the charge that you alleged against [Schreiner], we are going with the 151.91; correct?
“[Deputy Busby]: Yes, sir.
“[Schreiner’s counsel]: Now, that is obviously above the 28 grams that’s required for [trafficking in] methamphetamine and below 500?
“[Deputy Busby]: Yes.
“[Schreiner’s counsel]: However, we can’t ascertain, or you can’t say beyond a reasonable doubt.as .to the meth composition or the meth that makes up the meth oil; correct?
*1241 “[Deputy Busby]: No, sir. It will all test positive for methamphetamine.
“[Schreiner’s counsel]: And, likewise, we can’t say as requested by you or your office the pseudoephedrine amount that makes up that [meth oil]; correct?
“[Deputy Busby]: No, sir.
“[Schreiner’s counsel]: And be that— being the case — we talked about the granular form of methamphetamine, that’s — that’s the form generally bought and sold on the street that is used by a consumer; correct?
“[Deputy Busby]: Yes, sir.
“[Schreiner’s counsel]: So if I were to take a gram of granular methamphetamine and chop all of it away but a tenth of that gram, and -I were ,.. [to] light that granular of meth on fire, melt it down to its liquid form, get a syringe and fill this cup with water or Gatorade, whatever the case may be, if I were to take that tenth of a gram, or whatever I’ve got, that whole cup, if filled with water, would test for methamphetamine; correct?
“[Deputy Busby]: Yes, it would.
“[Schreiner’s counsel]: The presence of methamphetamine?
“[Deputy Busby]: Yes, sir:-
“[Schreiner’s counsel]: Exactly like we have in this case; éorreet?
“[Deputy Busby]: Yes, sir.
“[Schreiner’s' counsel]:' Now, the difference here being is if I had the tenth of a gram of granular form1 of methamphetamine and I put it in my pocket, you would at that point charge me with possession; correct?
“[Deputy Busby]: Yes,, sir, that’s correct. - ,, ,
“[Schreiner’s counsel]: However, if I take that same-tenth of a gram of granular methamphetamine and melt it down and put a drop of it in this cup, then we would be talking ábout trafficking methamphetamine; correct?
“[Deputy Busby]: That is correct.”
(R2.8-10.) Deputy Busby also stated that she has never arrested someone for either buying or selling “meth oil.” Deputy Busby, however, stated that “meth oil” is a “mixture ... that contains methamphetamine” and is “the final process [in the manufacture of methamphetamine] before the smoking — the next to last step before the smoking — the final stage” — “before you smoke it off to make the granular form.” (R2.11,12, and' 13.)
After the State rested, Schreiner moved for a judgment of acquittal, arguing:
“The way the statute is written is that it’s a methamphetamine or any mixture thereof. I looked extensively last night for a good old-fashioned just definition of. mixture. But I think at this point— without finding a satisfactory definition of mixture, but at this point I think we would have to apply — you know, the statute is strictly construed, I would ask that we apply some common sense:ihto that, too.
“There has been testimony of cutting agents and additions to the granular form of meth[arnphetamine] to make it larger amounts for sale, whatever the case may be. I would argue that that’s what the legislature- intended when they said .mixture. It, is an actual finished final product • of methamphetamine, or methamphetamine in the granular state.
“The problem we would run into, Judge, if this case goes forward is as the hypothetical that I used with both — I believe Deputy. Q’-Shea, I’ve used with him, and certainly -with [Deputy] Busby, is that you can’literally take a tenth of a gram, half a gram, whatever,’you know, a gram, melt it down to its liquid form, take the liquid form and go over to your *1242 lunch cup filled with whatever, whether it be Coke, water, Gatorade, whatever, take that gram that was once — you would be charged with possession, pour it into there, you know, the police come on scene, you’ve gone from possession to trafficking just based on the weight of the water substance. That’s if we knew the actual amount using the gram as the hypothetical.
“In this case, we don’t know the amount of methamphetamine contained in the meth oil. It tests for it because it’s used in the product of the methamphetamine. It also tests for pseu-doephedrine. There is no way to say this is how much meth is in there, this is how much pseudoephedrine is in there.
“So I think, Judge, if it goes to the jury, we’re taking out the fact that we don’t actually know the content of the methamphetamine. The weight that’s produced in this is the weight of the liquid that the methamphetamine is in. And I tried to use several hypotheticals in this case because I think it’s very illustrative of a point.
“I just don’t think — I don’t think the State has proven a case. Their prima facie [case] on trafficking, Judge.”
(R2.19-21.) The circuit court denied Schreiner’s motion.
Thereafter, Schreiner, without presenting evidence, rested his case; both the State and Schreiner presented closing arguments; and the circuit court charged the jury. The jury returned a guilty verdict for trafficking in methamphetamine.
On October 2, 2014, Schreiner filed a timely motion for a new trial, again arguing that there “is no current State case law defining what ‘mixture’ is as detailed in the trafficking statute [§ ] 13A-12-231(ll)a.[, Ala.Code 1975.]” (C. 22.) Schreiner, however, provided “[a]s guidance” the decision of the United States Court of Appeals for the Eleventh Circuit in United States v. Rolande-Gabriel, 938 F.2d 1231 (11th Cir.1991), which, he argued, stands for the proposition that “the term ‘mixture’ ... does not include unusable mixtures.” (C. 23.) Thus, Schreiner concluded that because Deputy Busby testified that the “meth oil” was “ ‘toxic’ and could not be consumed or sold” and has never seen “meth oil” either “marketed for sale or consumption,” the “meth oil” seized in this case is not a “mixture” under § 13A-12-231(ll)a., Ala.Code 1975. The circuit court, on October 27, 2014, denied Schreiner’s motion, and Schreiner appealed.

Discussion

On appeal, Schreiner contends that the circuit court erred in denying his motion for a judgment of acquittal and his motion for a new trial because, he says, “[t]he ‘meth oil’ made the basis of the trafficking change is an unusable liquid that should not be considered a mixture for purposes of the trafficking statute.” (Schreiner’s brief, p. 3.)
Schreiner contends that this is an issue of first impression, and he urges this Court to adopt the “marketability” standard — also known as the “usability” standard — set forth in Rolande-Gabnel, supra. The Alabama Supreme Court, however, has both defined the term “mixture” as that word is used in the trafficking statute and has expressly rejected the “usability” standard.
Specifically, in Ex parte Fletcher, 718 So.2d 1132, 1133-35 (Ala.1998), the Alabama Supreme Court explained:
“The dispositive issue in this case is what constitutes a ‘mixture’ for purposes of § 13A-12-231(2)[, Ala.Code 1975]. Neither the Code of Alabama 1975 nor this Court’s cases define ‘mixture’ for purposes of drug-trafficking crimes. Accordingly, we look to the courts of *1243 other jurisdictions for assistance. In Chapman u United States, 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), the Supreme Court of the United States held that the term ‘mixture or substance,’ as used in the federal drug-trafficking statutes,•included blotter paper into which a detectable amount of lysergic acid diethylamide (‘LSD’) had been absorbed,. The Supreme Court explained:
“ ‘Neither the statute nor the Sentencing Guidelines define the terms “mixture” and “substance,” nor. do they have any established common-law meaning. Those terms, therefore, must be given their ordinary meaning.... A “mixture” is defined to include “a portion of matter consisting of two or more components that do not bear a fixed proportion to one another and that however thoroughly commingled are regarded as retaining a separate existence.” Webster’s Third New International Dictionary 1449 (1986). A “mixture” may also consist of two substances blended together so that the particles of one are diffused among the particles of the other. 9 Oxford English Dictionary 921 (2d ed.1989). LSD is applied to blotter paper in a solvent, which is absorbed into the paper and ultimately evaporates. After the solvent evaporates, the LSD is left behind iñ a form that can be said to “mix” with the paper. The LSD crystals are inside of the paper, so that they are commingled with it, but the LSD does not chemically combine with the -paper.' Thus, it retains a separate existence and can be released by dropping the paper into a liquid or by swallowing the paper itself. The LSD is diffused among the fibers of the paper. Like heroin or cocaine mixed with cutting agents, the LSD cannot be distinguished from the blotter paper, nor easily separated from it.- Like cutting agents used with other-.drugs that are ingested, the blotter paper,, gel, or sugar cube carrying LSD can be and often is ingested with the drug.’
“Chapman, 500 U.S. at 461-62, 111 S.Ct. at 1925-26 (emphasis’ added) (citation and footnote omitted). In response to the argument that the dictionary definition of ‘mixture’ should be rejected because it would allow containers, such as glass vials or even an automobile in which the illegal drugs were being transported, to be counted, the Supreme Court stated:
“ ‘[Sjuch nonsense is not the necessary result of giving the term “mixture” its dictionary meaning. The term does not include LSD in a bottle, or LSD in . a car, because the drug is easily distinguished from, and separated from, such a “container.” The drug is clearly not mixed with a glass vial or automobile; nor has the drug chemically bonded with the vial or car. it may be true that the weights of containers and packaging materials generally are not included in determining a sentence for drug distribution, but that is because those items are also clearly not mixed or otherwise combined with the drug.’
“Chapman, 500 U.S. at 462-63, 111 S.Ct. at 1926 (emphasis added).
“Similarly, our .cases provide that ‘[wjords must be given their natural, ordinary, commonly understood meaning,-and where plain language is used, the court is bound to interpret that language to mean exactly what it says.’ Ex parte State Dep’t of Revenue, 683 So.2d 980, 983 (Ala.1996); IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992). Thus, we hold that for purposes of § 13A-12-231(2), a ‘mixture’ *1244 consists of two or more substances blended' together so that the particles of one substance are diffused among the particles Df the other(s) and yet each substance retains its separate existence. Where an illegal drug is commingled with, or diffused among, legal substances, the weight of the entire mixture should be counted. See Clark v. State, 562 So.2d 620 (Ala.Crim.App.1989) (holding that the commingling of white powder consisting of mannitol, a legal substance, with white powder consisting of cocaine, an illegal drug, was a ‘mixture’). Where, however, an illegal drug is easily distinguished from and easily separable from legal substances, only the weight of the illegal drug should be counted.
“Fletcher argues further that this Court should adopt the ‘usability’ concept embodied in the commentary to the federal Sentencing Guidelines to more strictly defíne a ‘mixture.’ Application note 1 in the commentary to 18 U.S.C.S. app. § 2Dl.l.(a), as amended in 1993, states:
“‘“Mixture or substance” as used in this guideline has the same meaning as in 21 U.S.C. § 841, except as expressly provided. Mixture or substance does not include materials that 'must be separated from the controlled substance before the controlled substance can be used. Examples of such materials- include the fiberglass in a cocaine/fiberglass bonded suitcase, beeswax in a cocaine/beeswax statue, and waste water from an illicit laboratory used to manufacture a controlled substance. If such material cannot readily be separated from the mixture or substance that appropriately is counted in the Drug Quantity Table, the court may use any reasonable method to approximate the weight of the mixture or substance to be counted.
“ ‘An upward departure nonetheless may be warranted when the mixture or substance counted in the Drug Quantity Table is combined with other, non-countable material in an unusually sophisticated manner in order to avoid detection.’
“(Emphasis added.) See 18 U.S.C.S. app., U.S. Sent. Guidelines, app. C, amend. 484 (discussing 1993 amendment to definition of ‘mixture’ set forth in the commentary to § 2D1.1). Thus, Fletcher argues that unless the legal substance is necessary for the use of an illegal drug, the legal substance should not count toward the weight of the illegal drug even if the legal substance is contained in a mixture with the illegal drug. See United States v. Rolande-Gabriel, 938 F.2d 1231 (11th Cir.1991). We disagree.
“The federal law’s adoption of the concept of usability to restrict the term ‘mixture’ comes from the 1993 amendment to the Sentencing Guidelines. 18 U.S.C.S. app., U.S. Sent. Guidelines § 2D1.1, Appl. n. 1 (backg’d). This amendment was adopted in reaction to certain decisions of federal courts that adopted the plain meaning of the term ‘mixture’, without a ‘usability restriction. See 18 U.S.C.S. app., U.S. Sent. Guidelines, app. 0⅛ amend. 484 (stating that the 1993 amendment to the definition of (mixture’ was brought about by certain decisions of the federal courts of appeal that included unusable substances in ‘mixtures’ with usable controlled substances); see, e.g., United States v. Young, 992 F.2d 207 (8th Cir.1993) (holding that the weight of the entire tablet and not just the amount of the illegal hydromorphine contained therein should be used to compute the defendant’s sentence); United States v. Lopez-Gil 965 F.2d 1124 (1st Cir.) (hold *1245 ing that fiberglass mixed with cocaine to form, a suitcase should be counted with the cocaine for purposes of computing the proper sentence), cert. denied, 506 U.S. 981, 113 S.Ct. 484, 121 L.Ed.2d 388 (1992); United States v. Restrepo-Contreras, 942 F.2d 96 (1st Cir.1991) (holding that the entire weight of beeswax-cocaine statues should be used in determining defendant’s sentence), cert. denied, 502 U.S. 1066, 112 S.Ct. 955, 117 L.Ed.2d 123 (1992).
“Unlike the United States Sentencing Commission, the Alabama Legislature has not adopted any guideline or statute that would restrict the concept of ‘mixture’ to ‘usable mixture.’ Absent specific direction by the Legislature, we will not construe the term ‘mixture’ contained in § 13A-12-231(2) against its plain meaning and so reward the extraordinary ingenuity of the criminal mind. We hold that in determining whether a defendant . has violated § 13A-12-231(2), all legal substances that are contained in a ‘mixture’ should be weighed along with the illegal drug contained therein.”
(Footnotes omitted.)
We recognize that Schreiner, unlike the defendant in Fletcher, was indicted for trafficking in methamphetamine — not trafficking in cocaine. Both trafficking in co-caiñe and trafficking in methamphetamine, however, are subsections of the “trafficking statute,” see § 13A-12-231, Ala.Code 1975, and the term “mixture” is used in a nearly identical manner in both subsections.
Specifically, the term “mixture” is used in the trafficking-in-cocaine subsection (“the cocaine subsection”) as follows:
“Any person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more, of cocaine or of any mixture containing cocaine, described in Section 20-2-25(1), is guilty of a felony, which felony shall be known as ‘trafficking in cocaine.’ ”
§ 13A-12-231(2), Ala.Code 1975 (emphasis added). The. term “mixture” is used in trafficking-in-methamphetamine subsection (“the methamphetamine subsection”) as follows:
“Any person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of methamphetamine or any mixture containing methamphetamine, its salts, optical isomers, or salt of its optical isomers thereof, is guilty of a felony, which felony shall be known as ‘trafficking in methamphetamine.’ ”
§ 13A-12-231(11), Ala.Code 1975 (emphasis. added). Because the term “mixture” is used in the same manner, in both subsections of the trafficking statute, we define the term “mixture” in the methamphetamine subsection in the same manner as the Supreme Court defined the term “mixture” in the cocaine subsection,[4] In other words,
“for purposes of § 13A-12-231[ (11) ]; a ‘mixture’ consists of two or more substances blended together so that the particles of one substance are diffused among the particles 'of the other(s) and yet each substance retains its separate existence. Where an illegal drug is commingled with, or diffused among, legal substances, the weight of the entire mixture should be counted.... Where, however, an illegal drug is easily distin *1246 guished from and easily separable from legal substances, only the weight of the illegal drug should be counted.”
Ex parte Fletcher, 718 So.2d at 1134 (internal citations omitted). Additionally, as in the cocaine subsection, there is no “specific direction of the Legislature” in the methamphetamine subsection restricting a “mixture” to only a “usable mixture.” Id. Thus,
“[w]e hold that in determining whether a defendant has violated § 13A-12-231[ (11) ], all legal substances that are contained in a 'mixture' should be weighed along with the illegal drug contained therein.”
718 So.2d at 1135 (emphasis added).
Here, as set out above, Schreiner was indicted for trafficking in methamphetamine. Specifically, Schreiner was indicted for possessing a “mixture containing methamphetamine” — i.e., “meth oil” — in excess of 28 grams but less than 500 grams. Schreiner does not dispute that he possessed the “meth oil,” that the “meth oil” contained methamphetamine, or that the weight of the “meth oil” exceeded 28 grams. Schreiner, rather, contends only that the “meth oil” is not a “mixture” because, he says, “[t]here was/is no way of knowing the amount of methamphetamine contained within the ‘meth oil’ ” (Schreiner’s brief, p. 4) and that the “meth oil” is “toxic” and not usable.
As explained above, at trial, Deputy Busby testified that the “meth oil” tested positive for both methamphetamine and pseudoephedrine. According to Deputy Busby, one cannot determine the exact amount of methamphetamine contained in the “meth oil”; rather, the “meth oil” “will all test positive for methamphetamine.” (R2. 9 (emphasis added).) In other words, the “meth oil” consists of at least two substances — methamphetamine and pseu-doephedrine — “blended together so that the particles of one substance are diffused among the particles of the other[ ] and yet each substance retains its separate existence.” Ex parte Fletcher, 718 So.2d at 1134. Because “meth oil” consists of an illegal substance — methamphetamine— that is “diffused among” pseudoephedrine, the “meth oil” is, in fact, a mixture and “the weight of the entire mixture should be counted.” Id. Thus, the circuit court did not err in denying either Schreiner’s motion for a judgment of acquittal or his motion for a new trial.
Moreover, we recognize that at trial Schreiner attempted to demonstrate that “meth oil” was not a “mixture” by setting forth hypothetical situations demonstrating that a person could subject himself to being indicted under the trafficking statute by dissolving a small amount of granular methamphetamine — any amount less than 28 grams — into some other liquid in excess of 28 grams because, as explained above, the entire liquid would test positive for methamphetamine. The Alabama Supreme Court has stated, albeit in a somewhat different context:
“ ‘[F]ew words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions.’ Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 96 L.Ed. 367 (1952). ‘Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.’ Id. (footnote omitted; emphasis added).”
*1247 Barber v. Jefferson Cnty. Racing Ass’n, Inc., 960 So.2d 599, 616 (Ala.2006). Likewise, here, in defining the term “mixture” as that term is used in the subsection of the Code of Alabama addressing methamphetamine, we need not go out of our way to define the term in such á manner as to protect those individuals whose deliberate, risky actions bring themselves within the purview of such proscribed conduct.
Based on the foregoing reasons, the judgment of the circuit court is affirmed.
AFFIRMED.
WINDOM, P.J., and WELCH, KELLUM, and BURKE, JJ., concur. ■ -

.The circuit court also imposed the mandatory $50,000 fine, see § 13A-12-231(ll)a., Ala. Code 1975, and a $1,000 drug-demand:reduction assessment, see § 13A-12-281(a), Ala. Code 1975. The circuit court, however, did not impose the mandatory $100 assessment to the Alabama Department of Forensic Sciences Trust Fund, see § 36-18-7(a), Ala.Code 1975, or a mandatory crime-victims-compensation assessment, see §. 15 — 23—17(b), Ala.Code 1975. Thus, this Court, on March 16, 2015, remanded this case by order to the circuit ' court for that court to impose those mandatory assessments. The record on return to remand demonstrates that circuit court had complied with our instructions on remand. (Record on Return to Remand, C. 15.)

. The record on appeal includes two separate, individually numbered transcripts for Schreiner’s trial. References to these two transcripts are cited as "Rl” and “R2.”

. According to Deputy Busby, the residence was owned by. an unidentified woman and was occupied by Schreiner and his cousin. Deputy Busby asked all three for consent to search the residence. The record does not establish the individual who refused to consent to the search.

. When the Supreme Court defined the term "mixture” in FUtchef, both the cocaine subsection and the methamphetamine subsection were included in the trafficking statute. See Act No. 199S-543, Ala. Acts 1995.